587 A.2d 1353

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David C. COPENHEFER, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1990.

Decided March 18, 1991.

Reargument Denied May 2, 1991.

Timothy J. Lucas, Erie (court-appointed), for appellant.

William R. Cunningham, Dist. Atty., James K. Vogel, First Asst. Dist. Atty., Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In this appeal from the imposition of a death sentence, appellant David C. Copenhefer presents the novel claim that state acquisition of documents he mistakenly thought he had deleted from his computer was an impermissible intrusion on his right of privacy. He also attacks trial counsel's effectiveness due to his failure to challenge certain incriminating statements made by appellant, and claims that arbitrary jury proceedings during the penalty phase of his trial require commutation of his death penalty to life in prison.

██ Appellant was convicted of first-degree murder for kidnapping the wife of a bank executive, demanding a ransom, then killing her. Although he does not allege that the evidence is insufficient to sustain the verdict against him, this Court is required in capital cases to review the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The applicable standard of review is whether, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could find every element of

the crime beyond a reasonable doubt. *Commonwealth v. Bryant*, 524 Pa. 564, 567, 574 A.2d 590, 592 (1990).

Viewed in accordance with that standard, the evidence presented at trial established the following facts. On June 16, 1988, Sally Weiner received a telephone call purportedly from a congressman's office asking that she meet with the caller to discuss arrangements for the presentation of a civic award to her husband. The next day, around noon, she drove to the agreed meeting place, parked her car, and was never seen again alive. Several hours later, her husband, Harry, manager of the Corry office of Pennbank, received a telephone call playing a recorded message from his wife telling him she had been kidnapped and that the kidnapper demanded ransom money from the bank. Mr. Weiner was directed to retrieve a duffel bag from the parking lot outside his bank; the bag contained additional threats and instructions. Mr. Weiner called a vice president of the bank, as well as the bank's security office, local police, state police, and the FBI. Mr. Weiner never received the additional radio instructions necessary to follow the directions contained in the duffel bag and therefore did not comply with the kidnapper's demands.

Sally Weiner's body was discovered two days later on June 19, 1988, in a rural area north of her home. She had died as the result of a gunshot wound to the back of her head.

Initial investigations by the FBI, state police, and local police resulted in the discovery of a series of computer-generated notes and instructions, each one leading to another, which had been concealed at various hiding places in and around Corry, Pennsylvania. The investigation also produced several possible suspects, including appellant, David Copenhefer, who owned a nearby bookstore, had had unproductive transactions with Mr. Weiner's bank, and apparently had bad personal relations with the Weiners.

An examination of trash discarded from appellant's store revealed drafts of the ransom note and directions. Subsequent search warrants resulted in seizure of incredibly

comprehensive evidence against appellant. This included evidence tying appellant's fingerprints, computer, weapons and ammunition, clothing, automobile, and materials from his home and office to the victim or the murder site.

His fingerprints appeared on the original ransom note and on some of the hidden notes. Police discovered rough drafts of the ransom note, a map of the hidden notes, as well as the notes and directions themselves in appellant's handwriting, some of which bore his fingerprints. Appellant had a collection of guns, including two which might have fired the fatal bullet. He also had glazier ammunition, a nonstandard composition designed to fragment on impact so that after entering a body it will not exit and injure another person, of the type used to murder Mrs. Weiner. A metal rod from his home had been used to secure one of the hidden notes. Crepe paper torn from a roll at his store had been used to help secure another note. Human female skin tissue was found on his clothing. Tread marks matching appellant's automobile tires were found at one hiding place and at the murder scene. Finally, appellant's computer contained a series of drafts and amendments of the texts of the phone call to Mrs. Weiner on Thursday, the phone call to Mr. Weiner on Friday, the ransom note, the series of hidden notes, and a twenty-two point plan for the entire kidnapping scheme.

Taken together, the circumstantial evidence presented at appellant's trial pointed overwhelmingly to his guilt. We conclude that there is sufficient evidence to sustain the verdict against him.

■ Appellant's first argument, to be fully understood, requires some knowledge of computer terminology and technology. Appellant, after using his computer to draft documents related to the kidnapping and ransom of Mrs. Weiner, attempted to erase or delete them from his computer's memory. In fact, what he accomplished was to delete the names of the documents from the directory or index of files contained in the computer's memory. But employing the "delete" function on his computer did *not* actually

eliminate the files from his computer's internal "hard drive." The files remained in the computer's memory until subsequent usage might have required the hard-drive storage space occupied by the "deleted" files, at which time the files would have been written over by new data and thereby displaced. In appellant's case, however, subsequent usage never displaced the files in question and they remained in the memory of his computer.

There are software programs designed to retrieve such documents from a computer's hard drive after they have been deleted from directories of files in storage. FBI agent Al Johnson, a computer expert, employed such a software program to delve into appellant's computer and retrieve the files which appellant mistakenly believed he had destroyed.

Appellant now argues that even though his computer was validly seized pursuant to a warrant, his attempted deletion of the documents in question created an expectation of privacy protected by the Fourth Amendment. Thus, he claims, under *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and its progeny, Agent Johnson's retrieval of the documents, without first obtaining another search warrant, was unreasonable under the Fourth Amendment and the documents thus seized should have been suppressed.

Appellant appears to be arguing that there is a constitutionally significant difference between 1) intentionally storing a document in a personal computer's memory and 2) unintentionally leaving the document in the computer's memory by failing to delete it properly. In the first instance, a warrant authorizing seizure of the computer would authorize reproduction of any documents stored therein. Appellant argues that his attempted deletion or destruction of the documents creates a new and different legally and constitutionally protected right of privacy, requiring a second or additional warrant prior to conducting a search. He informs us that this is a question of first impression, never having been addressed directly by any appellate court in the country.

We cannot accept appellant's argument. A defendant's attempt to secrete evidence of a crime is not synonymous with a legally cognizable expectation of privacy. A mere hope for secrecy is not a legally protected expectation. If it were, search warrants would be required in a vast number of cases where warrants are clearly not necessary. Although we are aware of no cases addressing appellant's specific argument, many analogous situations do not require police officers to obtain a *second* search warrant.

A paper tablet, seized pursuant to a valid search warrant, may be subjected to scientific and physical manipulation and analysis without a second search warrant. Appellant would argue that if the owner of the tablet had removed and destroyed the top page on which he had written a message, a second search warrant would be required to permit the state to decipher the message by enhancing the second-page indentations caused by the pressure of the pen upon the missing top page. Yet no one would deny that a second search warrant is not required in those circumstances despite the writer's obvious attempt to mask his message, as his hope for privacy does not amount to a legally protected expectation of privacy.

The same would be true of a diary recorded in a private code. If we accepted appellant's argument, after seizing the diary pursuant to a valid search warrant, the state would be obligated to obtain a second warrant before it could attempt to read the diary by deciphering the code. Yet the diarist's obvious attempt to achieve secrecy does not create a legally protected expectation of privacy nor the need to obtain a warrant before subjecting legally seized physical evidence to scientific testing and analysis to make it divulge its secrets.

These examples prove the fallacy in appellant's argument. An attempt to destroy evidence is not equivalent to a legally protected expectation of privacy. Appellant's unsuccessful attempt to delete documents or files from his computer did not create a legally protected expectation of privacy which would have required a second warrant before

the prosecution applied technology to elicit the content of files buried in the memory of the computer. At best, appellant had the hope of achieving secrecy, but his hope did not prohibit the state from subjecting validly seized physical evidence from any scientific analysis possible within current technology. We therefore reject appellant's second argument.

■ The next issue is whether trial counsel was ineffective for failing to move to suppress statements made by appellant to members of the district attorney's office while appellant was in pretrial confinement. In reviewing a claim of ineffective assistance of counsel, we must first determine whether the issue underlying the claim is of arguable merit. If the claim lacks merit, the inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless issue. If the claim has merit, we must determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. Finally, appellant must show that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial. *Commonwealth v. Rollins*, 525 Pa. 335, 344, 580 A.2d 744, 748 (1990). Counsel is presumed to be effective, and the burden is on appellant to establish the contrary. *Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20 (1989).

■ In December, 1988, appellant requested to speak privately to the district attorney regarding fellow inmates' discussions of criminal activity and demonstrations of criminal techniques. When the district attorney received appellant's letter requesting a meeting, he wrote to appellant, with copies to defense counsel, stating that a meeting could be held, with or without the presence of counsel, but that a witness would have to be present. Appellant expressed his continued desire to hold the meeting, without defense counsel, and subsequently met with the assistant district attorney and Erie County detective Mark Watts. At the beginning of the meeting, appellant executed a waiver of his *Miranda* rights.

The substance of the meeting was appellant's description of demonstrations of criminal activity by other inmates. When asked whether he ever did anything like that, he said he demonstrated how to shoot someone in the head without severing the medulla so that the victim would linger for hours before dying. He explained that his demonstration took place in June, 1988, on the twentieth anniversary of the assassination of Senator Robert F. Kennedy.

Defense counsel objected to the relevance of the officer's testimony about the meeting, but the trial court admitted the evidence, as it pertained to the medical evidence that the victim in this case was shot in the head in such a way that she did not die immediately but suffered a lingering death. Appellant now argues that the testimony was suppressible and that counsel was ineffective for failing to so move.

This argument is untenable. Appellant argues that suppression is warranted, not because of irrelevance, but because of improper interrogation procedure. He relies on *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), and *Commonwealth v. Dixon*, 475 Pa. 17, 379 A.2d 553 (1977), which held that a valid waiver of *Miranda* rights requires that a defendant be aware of the direction and purpose of the questioning. This court stated that "while there is no need for the police to explain in detail all of the technicalities of the charges at issue, the accused in order to make a valid waiver of the right to counsel should at least know the general nature of the transaction giving rise to the charges." *Commonwealth v. Richman*, 458 Pa. at 175, 320 A.2d at 355. The rule was explained further in *Dixon, supra:* "It is clear from *Richman*, however, that the suspect need not have knowledge of the 'technicalities' of the criminal offense involved; rather, it is necessary only that he be aware of the 'transaction' involved." *Commonwealth v. Dixon*, 475 Pa. at 22–23, 379 A.2d at 556. *Dixon* involved a woman under investigation for homicide who was interrogated while under the impression that she was being questioned about her failure to make restitution for a malicious mischief conviction. Her confession to the mur-

der was suppressed because her *Miranda* waiver was not knowing and intelligent—it being a far different thing to forgo a lawyer when a summary offense is involved than to waive counsel when murder is at stake. *Id.*

These cases do not support appellant's argument. His interview on December 16, 1988 took place nearly six months after his arrest, and he was well aware of the specific charges against him, and thoroughly familiar with the "general nature of the transaction giving rise to the charge." He was not under investigation or being interrogated about anything else and was not misled into believing otherwise. There is absolutely no reason to doubt his knowing, voluntary, and intelligent waiver of the right to counsel during the interview. There was thus no valid basis for a suppression motion, and counsel cannot be deemed ineffective for declining to pursue a meritless course of action.

■ Appellant's final argument is that the trial court erred during the penalty phase in refusing to charge the jury that appellant's lack of a prior record constituted a mitigating circumstance as a matter of law. The prosecution and defense counsel had entered a stipulation that appellant had no prior record. Defense counsel requested a jury instruction that that fact must be found as a mitigating factor in the jury's deliberations on sentencing. The trial court did not give the instruction. The jury ultimately found two aggravating circumstances and no mitigating circumstances,[1] resulting in a death sentence pursuant to 42 Pa.C.S. § 9711(c)(1)(iv).

In evaluating jury instructions, the guiding principle is that the charge is to be read in its entirety. *Commonwealth v. Zettlemoyer*, 500 Pa. at 46, 454 A.2d at 953. We find no error in the following instructions given by appellant's trial judge:

1. A photocopy of the verdict slip and the colloquy between the court and the jury concerning the jury's findings is attached to this opinion as Appendix A.

566

THE COURT: Ladies and gentlemen, you must now decide the sentence, to sentence this defendant to death or life imprisonment. Your sentence will be dependent upon what you find about aggravating and mitigating circumstances, and as I have stated, the Sentencing Code defines aggravating and mitigating circumstances as those things that make a first degree case either more terrible or less terrible. A mitigating circumstance is anything about the defendant or the crime which in fairness and mercy should be taken into account in deciding punishment. Even when there is no excuse or justification for the crime, our law requires consideration of more than just the bare facts of the crime.

Therefore, a mitigating circumstance may arise from any of the diverse frailities of mankind. Mitigating circumstances are any facts relating to the defendant's character, education, environment, mentality, life and background, or any aspect of the crime itself which may be considered extenuating, or as reducing his moral culpability, or making him less deserving of the extreme punishment of death. You may consider as mitigating circumstances any circumstance which tends to justify the penalty of life imprisonment.

Your verdict must be a sentence of death if you unanimously find, that is all of you find, at least one aggravating, and no mitigating circumstances, or if you unanimously find one or more aggravating circumstance which outweighs any mitigating circumstances.

If you do not all agree on one or the other of these findings, then the only verdict that you may return is a sentence of life imprisonment. The Commonwealth must prove any aggravating circumstances beyond a reasonable doubt.

By contrast, the defendant must prove any mitigating circumstances only by a preponderance of the evidence; that is, by the greater weight of the evidence.

You will note that mitigating circumstances differ from aggravating ones because you are not required to be

convinced beyond a reasonable doubt that a mitigating circumstance exists before you may take that circumstance into account as you deliberate this case.

In this case, under the Sentencing Code, only the following matters, if proven to your satisfaction beyond a reasonable doubt, can be aggravating circumstances:

First, that Sally Weiner was being held hostage by the defendant for ransom or reward. And, second, that the defendant committed a killing while in the perpetration of felony. A felony possible in this case is kidnapping. In this case, under the Sentencing Code, the following matters, if proven to your satisfaction by a preponderance of the evidence, can be mitigating circumstances:

First, the defendant has no significant history of prior criminal convictions; and, second, any other evidence of mitigation concerning the character and record of the defendant and the circumstances of the offense.

Now, I'll ask the tipstaves, if they would, at this moment, to give you a copy of the sentencing verdict slip in which you will record your verdict and findings, and if you'll pass those out among the jury.

. . . .

As I told you earlier, and as the verdict slip indicates, you must agree unanimously on one of two general findings before you can sentence the defendant to death. And I'll repeat those. They are a finding that there is at least one aggravating circumstance, and no mitigating circumstances, or a finding that there are one or more aggravating circumstances which outweigh any mitigating circumstances.

In deciding whether aggravating outweigh mitigating circumstances, do not simply count their number. Compare the seriousness and the importance of the aggravating with the mitigating circumstances. If you all agree on either one of the two general findings, then you can and you must sentence the defendant to death.

When voting on the general finding, you are to regard a particular aggravating circumstance as present only if

you all agree that it is present. On the other hand, each of you is free to regard a particular mitigating circumstance as present despite what other jurors may believe. This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives a defendant the full benefit of any mitigating circumstances. It is closely related to the burden of proof requirements. Remember, the Commonwealth must prove any aggravating circumstances beyond a reasonable doubt, while the defendant need only prove any mitigating circumstances by a preponderance of the evidence. If you do find that an alleged aggravating circumstance was proven, that does not automatically or necessarily mean that you should sentence Mr. Copenhefer to death. Instead, such a finding only means that you must consider other factors, and more specifically, mitigating circumstances, before deciding whether a sentence of death or life imprisonment is appropriate.

*You must consider all evidence of mitigation.* The weight which you give to a particular mitigating circumstance is a matter for your moral, factual, and legal judgment. *However, you may not refuse to consider any evidence in mitigation which has been proven to your satisfaction by a preponderance of the evidence. I charge you that you must consider the mitigating circumstances offered by the defendant.* This does not mean that you must accept them as mitigating circumstances, for you shall only do that if one or more of you determines that those mitigating circumstances have been proven by a preponderance of the evidence.

*The list of mitigating circumstances offered cannot limit your deliberations, since you are free to consider any aspect of the crime or of the character of the defendant as mitigating in your sole discretion.* If you do not agree unanimously on a death sentence and on one of the two general findings that would support it, then you have two immediate options. You may either contin-

ue to discuss the case and deliberate what your verdict should be, or if all of you agree to do so, you may stop deliberating and sentence the defendant to life imprisonment. If you are still unable to agree on a verdict after conscientious and thorough deliberations, report that to me. If it seems to me that you are hopelessly unable to reach a unanimous verdict, it will be my duty to sentence the defendant to life imprisonment.

Remember, that before the death penalty can be imposed, you must unanimously find that aggravating circumstances have been proven beyond a reasonable doubt and that they outweigh any mitigating circumstances. However, a unanimous verdict for life imprisonment is not necessary. If after due deliberation, any of you find that there are no aggravating circumstances, or that the mitigating circumstances outweigh the aggravating circumstances, then there cannot be unanimous verdict on the death penalty, and the sentence then shall be life imprisonment.

Read the verdict slip which you have been given before you begin deliberations. It tells you, among other things, how to record your sentencing verdict and the findings.

Now, you must decide, consider all the evidence and the arguments of both the Commonwealth and the defendant, including the evidence you heard during the earlier trial, the testimony of the defendant when he addressed you at that time. The evidence that was used in the earlier trial will be here in the courtroom. If you see a need or desire to see any of that evidence, we will, again, have it available to you.

I'm not going to send it out with you because of the volume, obviously. Be fair and do not let yourself be influenced by passion or by prejudice. Remember that your verdict is not merely a recommendation. It actually fixes the punishment at death or life imprisonment. Your verdict, if it is to be death, must be unanimous, it must be the verdict of each and every one of you.

The verdict slip (Appendix A infra) indicates clearly that the jury did consider evidence of mitigation—viz., that appellant had no significant history of prior criminal convictions. Any apparent confusion in the proceedings has to do with filling out the verdict slip, and the colloquy which occurred when the jury returned its verdict did not clarify the process. But it is readily apparent that the jury did follow the court's instructions in considering appellant's lack of a prior record during its deliberations.

Our standard of review is set forth in the Sentencing Code at 42 Pa.C.S. § 9711(h)(3):

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

It is not suggested that subsection (ii) applies, and subsection (iii) is addressed separately infra. There is nothing in the record which suggests that the verdict of death was the product of passion, prejudice, or any arbitrary factor. The lack of certainty as to how the complicated verdict slip was to be marked does not constitute passion, prejudice, or arbitrariness. We must therefore reject appellant's third argument.

■ Finally, in accordance with our duty to review sentences of death from the standpoint of their proportionality to sentences imposed in similar cases, *Commonwealth v. Zettlemoyer*, 500 Pa. at 62, 454 A.2d at 961, and 42 Pa.C.S. § 9711(h)(3)(iii), we have reviewed the sentence imposed upon appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. *See Commonwealth v. Frey*, 504 Pa. 428, 443, 475

A.2d 700, 707–08, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). We perceive no excess or disproportionality in the sentence imposed. Accordingly, the sentence must be affirmed.[2]

Judgments of sentence affirmed.

CAPPY, J., files a concurring and dissenting opinion in which NIX, C.J., and ZAPPALA, J., join.

## APPENDIX A

```
COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
 :
 VS. : OF ERIE COUNTY, PENNSYLVANIA
 : CRIMINAL DIVISION
DAVID C. COPENHEFER : NO. 1325 A & B OF 1988
```

### VERDICT SLIP

#### I. GENERAL INSTRUCTIONS

A. READ THROUGH THE ENTIRE VERDICT SLIP BEFORE BEGINNING DELIBERATIONS.

B. AGGRAVATING AND MITIGATING CIRCUMSTANCES PRESENTED TO THE JURY.

1. The following aggravating circumstances are submitted to the jury and must be proven by the Commonwealth beyond a reasonable doubt.

1. The victim was held by the defendant for ransom or reward;

2. The defendant committed the killing while in the perpetration of a felony.

2. The following mitigating circumstances are submitted to the jury and must be proven by the defendant by a preponderance of the evidence:

1. The defendant has no significant history of prior criminal convictions.

2. Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

2. The Deputy Prothonotary of the Western District is directed to transmit the complete record of this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

572

C. DO NOT COMPLETE THIS SENTENCING VERDICT SLIP UNTIL YOUR
DELIBERATIONS ARE CONCLUDED. THIS SENTENCING VERDICT SLIP IS
ONLY TO BE USED TO RECORD YOUR SENTENCING VERDICT AND THE
FINDINGS UPON WHICH IT IS BASED.

D. IF, AFTER SUFFICIENT DELIBERATION, YOU CANNOT UNANIMOUSLY
REACH A VERDICT, DO NOT COMPLETE OR SIGN THIS SLIP, BUT RETURN
IT TO THE JUDGE. THE JUDGE WILL DETERMINE IF FURTHER
DELIBERATIONS ARE REQUIRED; IF THEY ARE NOT, THE JUDGE WILL
SENTENCE THE DEFENDANT TO LIFE IMPRISONMENT.

PART II - SENTENCING VERDICT AND FINDINGS

If you have reached unanimous verdict, complete this part of the
form.

In Section A, indicate whether the sentencing verdict is
death or life imprisonment. If the sentence is death, indicate
the basis for that verdict by completing Section B. If the
sentence is life imprisonment, indicate the basis for that
verdict by completing Section C.

A. We, the jury, unanimously sentence the defendant to (check
one):

_____✓_____ Death

_____ Life Imprisonment

B. The findings on which the sentence of death is based are
(check one):

✓ 1. At least one aggravating circumstance and
no mitigating circumstance.

The aggravating circumstance(s) unanimously
found (is) (are):

_____

_____

_____

2. One or more aggravating circumstances which
outweigh(s) any mitigating circumstance(s).

The aggravating circumstance(s) unanimously
found (is) (are):

_VICTIM HELD FOR RANSOM_____

_FELONY -KIDNAPPING_____

_PLANNED_____

_VICTIMS DEATH_____

The mitigating circumstance(s) found by one
or more of us (is) (are):

_Experience__

C. The findings on which the sentence of life imprisonment is based are (check one):

 ____ 1. No aggravating circumstance exists.

 ____ 2. The mitigating circumstance(s) (is) (are) not outweighed by the aggravating circumstance(s).

 The mitigating circumstance(s) found by one or more of us (is) (are):

The following colloquy took place when the jury returned to the courtroom to announce its verdict following deliberations in the penalty phase in appellant's trial:

THE COURT: Ladies and gentlemen, I'm reviewing the verdict slip that you have provided for me. Let me just double check something. I think that I find there is an inconsistency on this, and I'm going to have to ask you to take a moment to go back and reconsider this. I'm dealing specifically with part 2 b, in which you must check off either one or two as it is applicable. You didn't check off either one of them. I think I understand which one it is, I don't know that it's necessary for you to leave the jury box. I'm going to return this to you, to the foreman so that he can look at that, and determine—and make a determination. Look carefully, if you feel that you have to go back in the jury room, that will be perfectly fine. I would suggest before you do that, reread both one and two to make sure which one you're checking off so you feel satisfied on that.

(The verdict is handed to the foreman and returned back to the judge.)

THE FOREMAN: From my understanding, that's the way it should be, Your Honor.

THE COURT: All right. Having checked off two, you crossed out the one part.

. . . .

THE COURT: I don't want you to go into that. If you do not have two down there, then logically—and I don't mean to suggest which is correct on this, but logically, you would be filling out number one, rather than two.

Give that back to the foreman.

(The verdict slip is returned to the foreman.)

THE FOREMAN: You're correct, Your Honor. Should I change it?

THE COURT: I would ask you then, if that is the case, whether you wish to consult with the other members of the jury or make the correction?

THE FOREMAN: No, I think we understand. Yes, I can make the change. There would be no problem.

THE COURT: All right.

THE FOREMAN: Do you want me to change it on this?

THE COURT: Yes.

Thank you. Now you may leave that with the foreman.

Mr. Foreman, I understand from your submission of the verdict slip that you have reached a determination of sentence, is that correct?

THE FOREMAN: Yes, we have, Your Honor.

THE COURT: And what is that sentence?

THE FOREMAN: Penalty of death.

THE COURT: And on what basis?

THE FOREMAN: On the basis of item number one, that there is at least one aggravating circumstance and mitigating—no mitigating circumstances.

THE COURT: What did you find as the aggravating circumstance?

THE FOREMAN: That the victim was held for ransom, that there was felony kidnapping, it was planned, and ultimately, the victim did die.

THE COURT: Thank you. You may pick up the verdict slip. You may be seated, Mr. Foreman.

MR. WILLIAMS: Your Honor, if I may, on behalf of the defense, we would ask that the jury be polled.

THE COURT: All right....

What is your verdict in this case, ma'am?

JUROR NO. 1: Death.

THE COURT: Do you agree with the verdict as stated, or the sentence as stated, and the reasons as stated by your foreman?

JUROR NO. 1: Yes.

THE COURT: Thank you. You may be seated.

[As each remaining juror was polled, he or she answered the same questions in identical fashion to Juror No. 1.]

CAPPY, Justice, concurring and dissenting.

I concur in the reasoning and analysis set forth in the majority opinion as to the resolution of the issues raised in the guilt phase of the within matter. However, I vigorously dissent to the majority's disposition of the issues raised in the penalty phase. Specifically, I oppose and dissent from the conclusion of the majority that the trial judge did not err in refusing to charge the jury that it must find at least one mitigating circumstance pursuant to 42 Pa.C.S.A. § 9711(e)(1).

42 Pa.C.S.A. § 9711(e)(1) expressly provides that "[m]itigating circumstances *shall include* the following: (1) The defendant has no significant history of prior criminal convictions." There was no dispute about the fact that the appellant did *not* have a prior criminal record; indeed, the prosecution and defense entered into a stipulation precisely to that effect. It is long established Pennsylvania law that a stipulation is a statement that the fact agreed upon is proven. *Commonwealth v. McMurray*, 198 Pa. 51, 59, 47 A. 952, 953 (1901).[1] Therefore, the jury should have been

---

1. Although not binding, the standard criminal jury instruction on stipulations which provides as follows, is consistent with the above cited, well recognized legal principles:

When the district attorney and counsel for the defendant stipulate, that is when they agree, that a certain fact is true their

instructed that they were bound to find at least one mitigating circumstance existed. *See Commonwealth v. Lemanski*, 365 Pa.Super. 332, 529 A.2d 1085 (1987)[2].

I believe that the General Assembly intended just what it said in enacting § 9711(e)(1); namely, that a sentencing jury *must* consider the absence of a prior record as a mitigating circumstance where such an objective circumstance is present. Where the absence of a prior record is not in dispute, as in this case, the sentencing jury has no discretion whether or not to consider it as the General Assembly has made it clear that this circumstance is a *mandatory* subject for jury consideration. Indeed, it would be nonsensical to suppose that the General Assembly actually intended to vest the sentencing phase jury with the discretionary authority to find that a defendant *did* have a prior record when there was *no* evidence to that effect. This is especially true where the prosecution and the defense had in fact stipulated to the contrary.

In my opinion, the trial judge erred when he instructed the sentencing jury in this case that "you may not refuse to consider any evidence in mitigation *which has been proven to your satisfaction by a preponderance of the evidence.*" In this case, the jury *had* to conclude that there was no prior record, based on the stipulation. Therefore, the jury was precluded from reviewing the sufficiency of the evidence as to this mitigating circumstance.

> stipulation is evidence of that fact. You should regard the stipulated or agreed fact as proven.

**2.** In *Lemanski,* the defendant was charged with various criminal acts which revolved around the growing of marijuana plants in his home. The Commonwealth had entered into a stipulation with the defense that the marijuana in question was for "personal use." However, during his closing argument to the jury, the prosecutor argued that the jury could disregard the stipulation and use their own judgment to decide if the defendant intended to sell the marijuana. The trial court then instructed the members of the jury that it was their decision to determine what "personal use" meant under the circumstances of the case. The Superior Court properly held that the prosecutor's disregard for the stipulation and the trial court's interpretation of the stipulation constituted reversible error. The Court nonetheless found the error harmless in that case as the defendant was not convicted of possession with intent to deliver.

Because the jury was required to find one mitigating circumstance, they should have been instructed as to the necessity for them to balance mitigating against aggravating upon their finding of any aggravating circumstances. 42 Pa.C.S.A. § 9711(c)(1)(iv); *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). The magnitude of the trial judge's failure to properly charge on this point is readily apparent in this case, as the jury did find two aggravating circumstances and no mitigating circumstances. Although it could be argued that the two aggravating circumstances as found outweighed the one mitigating, which should have been found, the legislature has specifically stated that such a decision be made by the jury. Thus, it was reversible error for the trial judge to have accepted the sentence as recommended by the jury.

Accordingly, because the trial court erred on this point, I believe that this appeal should be remanded to the trial court pursuant to Pa.C.S. § 9711(h)(4) for a new sentencing hearing.

I dissent.

NIX, C.J., and ZAPPALA, J., join in this concurring and dissenting opinion.