## Commonwealth v. Govens

*David Thalheimer, assistant district attorney,* for the Commonwealth.
*Daniel Preminger,* for defendant.

LORD, *J.,* April 27, 1992—

## PROCEDURAL HISTORY

Defendant James Govens was charged with delivery of a controlled substance in violation of 35 P.S. §780-113(a)(30) and tampering with physical evidence in violation of 18 Pa.C.S. §4910. On September 24, 1990, a motion to suppress physical evidence filed by defendant was heard by this court and was subsequently denied by this court. On March 13, 1991, after a trial before this court sitting without a jury, defendant was found guilty of all charges against him. On June 12, 1991, defendant's post-trial motions were denied by this court, and pursuant to the mandatory minimum sentencing provisions of 18 Pa.C.S. §7508(a)(3)(ii), defendant was sentenced to three to six years imprisonment for the drug charges and given a sentence of "guilty without further penalty" for the charge of tampering with physical evidence.[1] Defendant now appeals, contending in his statement of matters complained of on appeal[2] that this court erroneously denied his motion to suppress physical evidence and that there was insufficient evidence to support defendant's conviction for tampering with physical evidence. For the reasons set forth below, this court disagrees with defendant's contentions.

## FINDINGS OF FACT

The credible evidence presented at the hearing on the motion to suppress established that on September 21, 1988, Philadelphia Police Officer William Brunswick, acting in an undercover capacity, knocked on the door to a first floor apartment at 2334 North 20th

---

1. Defendant was granted bail pending his appeal.

2. Defendant's statement of matters complained of on appeal was not filed by counsel until February 9, 1991.

Street in the city of Philadelphia.[3] In response to the knock, a male voice from behind the closed door asked "What do you want?" Officer Brunswick answered that he wanted a "dime," a street term meaning a $10 bag of cocaine. The male voice then instructed Officer Brunswick to slip his money through a hole in the door. Officer Brunswick complied, slipping through the hole two $5 bills whose serial numbers had been prerecorded. Seconds thereafter, one small packet containing white powder which the officer believed to be cocaine was passed through the hole to Officer Brunswick. Officer Brunswick observed that the male who passed the packet of white powder through the hole had a gold ram's head ring approximately the size of a 50-cent piece on his finger. Officer Brunswick then left the location with the packet of white powder and immediately notified several other officers acting as his backup team what had transpired. Within 15 to 20 minutes thereafter the backup team, including Police Officer Virginia Pagano, proceeded to the same apartment at 2334 North 20th Street, knocked on the door and identified themselves as police. From inside of the apartment Officer Pagano heard sounds of shuffling and moving. Officer Pagano then pushed on the door and the door opened. When Officer Pagano entered the apartment, defendant was standing in a bathroom shaking clear plastic bags containing packets of powder into a toilet. Officer Pagano arrested defendant and recovered 176 packets of cocaine from in an around the toilet and bathroom area. Officer Pagano also recovered one large ram's head ring which defendant was wearing, as well as approximately $600, including

---

3. Unless otherwise indicated, all references to notes of testimony are to the notes from the hearing on the motion to suppress held September 24, 1990.

the two $5 bills which Officer Brunswick used to purchase the packet of cocaine.

The officers did not obtain any arrest warrant or search warrant prior to entering the apartment in which defendant was arrested.

## DISCUSSION

The first issue presented by this case is whether, under the particular facts and circumstances of this case, the U.S. Constitution or the Constitution of the Commonwealth of Pennsylvania required the police to obtain a warrant prior to entering the residence to arrest defendant. For the reasons set forth below, this court does not believe that a warrant was required for the officers to effect the entry to arrest which was made in this case.

The protection of persons against unreasonable invasions of their residences is indisputably a core objective of the Fourth Amendment to the U.S. Constitution and of Article I, section 8 of the Constitution of the Commonwealth of Pennsylvania.

Recognizing the centrality of this protection against unreasonable entries into residences to our federal and state constitutional schemes, both the U.S. Supreme Court and the Pennsylvania Supreme Court have drawn a "firm line" against warrantless entries at the threshold to a residence, holding that absent exigent circumstances,[4] that threshold may not be crossed without a warrant.[5]

---

4. This court does not believe that the entry to arrest which was made in the case at bar can be justified under the "exigent circumstances" exception to the warrant requirement as developed by the appellate courts of this Commonwealth. *Commonwealth v. Lopez*, 525 Pa. 185, 579 A.2d 854 (1990); *Commonwealth v. Williams,*

The rationale for this firm line at the threshold was clearly articulated by the U.S. Supreme Court in *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 1381-82, 63 L.Ed.2d 639, 653 (1980):

"The Fourth Amendment protects the individual's *privacy* in a variety of settings. In none is the *zone of privacy* more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.'" (emphasis added)

*Payton's* rationale for the firm line at the threshold of residences follows the Fourth Amendment analysis set forth by the U.S. Supreme Court in its seminal decision in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz*, the court explained:

"[T]his effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 U.S. at 351-52, 88 S.Ct. at 511, 19 L.Ed.2d at 582.

483 Pa. 293, 396 A.2d 1177 (1978); *Commonwealth v. Peterson,* 408 Pa. Super. 22, 596 A.2d 172 (1991); *Commonwealth v. Rispo,* 338 Pa. Super. 225, 487 A.2d 937 (1985).

5. *Payton v. New York*, 445 U.S. 573, 590, 63 L.Ed.2d 639, 653, 100 S.Ct. 1371, 1382 (1980); *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978).

Justice Harlan's frequently-quoted concurring opinion in *Katz* explained:

"As the court's opinion states, 'the Fourth Amendment protects people, not places.' The question, however is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a 'place.' ... Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable." 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588.

In *United States v. White,* 401 U.S. 745, 751-52, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453, 458-59 (1971), the Supreme Court adopted the second part of Justice Harlan's analysis in his concurring opinion in *Katz* as the means by which expectations of privacy are to be evaluated for Fourth Amendment purposes.

"Our problem is not what the privacy expectations of particular defendants in particular situations may be ... [o]ur problem, in terms of principles announced in Katz, is what expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant."

The method of analysis which Pennsylvania's appellate courts have employed is in accordance with that of the U.S. Supreme Court. As the Superior Court explained in *Commonwealth v. Peterson,* 408 Pa. Super. 22, 26, 596 A.2d 172, 174 (1991):

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers

and effects, against unreasonable searches and seizures.'
Our courts consistently have held that the application
of the Fourth Amendment depends upon whether the
person invoking its protection has a 'justifiable,'
'legitimate' expectation of privacy that has been invaded
by government action. See, e.g., *Commonwealth v.
Oglialoro*, 525 Pa. 250, 256, 579 A.2d 1288, 1291
(1990). ('The controlling consideration is whether the
individual contesting the search and seizure entertains
a legitimate expectation of privacy in the premises or
area searched.'); see also *Commonwealth v. Brundidge*,
404 Pa. Super. 106, 113, 590 A.2d 302, 305-306 (1991);
*Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577,
2580, 61 L.Ed.2d 220 (1979); *Rakas v. Illinois*, 439
U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).
The individual's actual or subjective expectation of pri-
vacy alone does not control whether constitutional pro-
tection will be extended. See e.g., *Hudson v. Palmer*,
468 U.S. 517, 525-526, 104 S.Ct. 3194, 3199 n.7, 82
L.Ed.2d 393 (1984); *Commonwealth v. Copenhefer*, 526
Pa. 555, 561, 587 A.2d 1353, 1356 (1991). As Mr.
Justice Powell noted in his concurring opinion in *Rakas*,
'it is not enough that an individual desired or anticipated
that he would be free from governmental intrusion.'
*Rakas v. Illinois*, 439 U.S. at 151-152, 99 S.Ct. at 434-35
(Powell, J., concurring). The test of legitimacy is not,
and could not be, whether the individual hopes to conceal
his activity. See *Commonwealth v. Copenhefer*, 526
Pa. at 561, 587 A.2d at 1356 ('A defendant's attempt
to secrete evidence of a crime is not synonymous with
a legally cognizable expectation of privacy.'); see also
*Oliver v. United States*, 466 U.S. 170, 182-183, 104
S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984). In order
to claim Fourth Amendment protection, an individual's
expectation of privacy must be one that society is pre-

pared to recognize as reasonable. See *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (Harlan, J., concurring). The resolution of this issue depends upon the totality of the circumstances and ultimately rests upon a balancing of the societal interests involved. *Hudson v. Palmer,* 468 U.S. at 527, 104 S.Ct. at 3200; *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)."

Thus, the question presented by the case at bar is whether our society is prepared to recognize as "constitutionally justifiable" or "legitimate" an assertion of "privacy" by a person whose assertively-private activity consisted of hiding behind the doorway of a residence while passing drugs beyond the threshold of the residence to whomever knocked on the door and put money through the hole in the door. This court believes that to recognize such an assertion of privacy as justifiable or legitimate would be folly.

The defendant in the case at bar made no effort to keep his criminal activity private. Rather, he was engaged in the open sale of cocaine to the drug-purchasing public. Defendant cannot logically assert a reasonable expectation of privacy as to an activity which defendant chose to expose to the open view of the public. In the words of *Katz:* "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection...." 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. Defendant wishes to assert the inviolability of his threshold at the same time that he violates that threshold with his felonious activity.

This court is not unmindful of the need for clear rules so that law enforcement officials may understand what is permissible and what is not under the Fourth Amendment and Article I, section 8 of our

Commonwealth's Constitution. This court is also not unmindful of the great value which the firm line against crossing the threshold without a warrant has served and will continue to serve in many other contexts. However, we should not be so inflexible in applying the "firm line at the threshold" rule as to lose sight of the fact that the Fourth Amendment's object is to protect persons exhibiting legitimate expectations of privacy. This court believes that to hold, as this court has in the case at bar, that a person who engages in felonious criminal conduct which crosses the threshold of his residence into a public area is subject to immediate[6] arrest without a warrant, even if that person is attempting to hide behind a door at the threshold, is in keeping with the objectives of the Fourth Amendment and Article I, section 8, and is a reasonably clear exception to the generally-applicable rule establishing a firm line at the threshold against warrantless entries to arrest. Obviously such an arrest can only be made with probable cause to believe that the arrestee committed a crime. Further, such warrantless entry to arrest does not entitle the police to conduct a search of the premises entered.

It may be argued that this decision represents a willingness to erode our constitutional protections in an improvident overreaction to the drug problems of today's inner cities. Instead, this court believes that

---

6. It should be noted that in *Payton v. New York, supra,* and its companion case, *Riddick v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the warrantless entries which were invalidated were to make arrests for criminal activity which occurred two days prior to the entry in *Payton* and approximately three years earlier in *Riddick.* In the case at bar the only interval between defendant's public display of criminality and his arrest was the 15 to 20 minutes that it took the undercover officer to report to his backup team and for the backup team to make the arrest.

this decision represents a considered application of the Fourth Amendment's rationale to the case at bar.

Moreover, it should be noted that the U.S. Supreme Court has permitted warrantless entries to arrest where, as in the case at bar, to hold otherwise would be to convert the Fourth Amendment from a constitutional provision designed to protect persons' legitimate expectations of privacy to a constitutional provision which turns upon doctrines of trespass and property law developed to serve other legal purposes. For example, the U.S. Supreme Court's decisions in *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and in *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), reflect that in the case of a "hot pursuit," the threshold will not always be an absolute barrier to a warrantless entry for arrest.

For the foregoing reasons, this court believes that the officers needed no warrant to enter the apartment to arrest defendant. The drugs were recovered as a result of a lawful plain view observation, and the ring and money were recovered as a result of a search incident to a lawful arrest. Accordingly, this court believes that it properly denied defendant's motion to suppress physical evidence.

Defendant also argues that the evidence introduced at trial was insufficient to support defendant's conviction for tampering with physical evidence in violation of 18 Pa.C.S. §4910. This section of the Crimes Code provides that a person commits a misdemeanor of the second degree "if, believing that an official proceeding or investigation is pending or about to be instituted, he ... alters, destroys, [or] conceals any ... thing with intent to impair its availability in such proceeding or investigation...." This court believes that defendant's efforts to flush cocaine down a toilet after the police

had knocked on his door and identified themselves as police falls within the proscription of this statute.

For the foregoing reasons, this court believes that defendant's contentions on appeal should be rejected.